In re Jerry R. DYSON, Debtor.

First Louisiana Business and Industrial Development Corporation, Plaintiff,

v.

Jerry R. Dyson and Kathy Dyson, Defendants.

Bankruptcy No. 00–10884.
Adversary No. 00–1148.

United States Bankruptcy Court, M.D. Louisiana.

April 29, 2002.

Peter Kopfinger, Baton Rouge, LA, for plaintiff.

Pamela Magee, Baton Rouge, LA, for debtor.

### REASONS FOR DENYING MOTION FOR DEFAULT JUDGMENT AND DISMISSING COMPLAINT

LOUIS M. PHILLIPS, Bankruptcy Judge.

This adversary proceeding arises from a Complaint filed by the Plaintiff, First Louisiana Business and Industrial Development Corporation ("First BIDCO") to determine the applicability of 11 U.S.C. § 524(a)(3)[1] to a debt owed to First BIDCO by the debtor, Jerry Dyson, and his wife, Kathy Dyson, and to determine that the debt owed should be excepted from discharge as to Kathy Dyson. Presently before the Court is the Motion for Default Judgment filed on behalf of First BIDCO. As a matter of first impression within the reported decisions, the Court determines that the exceptions to the applicability of § 524(a)(3) are case-specific, and therefore are determined by the chapter in which the debtor's case is brought. Accordingly, the Court finds that First BIDCO is not entitled, as a matter of law, to the relief it seeks, and therefore, the Court denies the

---

1. All further statutory citation, unless otherwise denoted, is to title 11, United States Code ("Bankruptcy Code.").

Motion for Default Judgment and will dismiss the Complaint.

## I. BACKGROUND

The exact factual background is somewhat complicated and bears some explication. In early 1996, Ocean & Inland Tankering, Inc. ("O & I") hired Kathy Dyson as a business/office manager. In her position as business/office manager, Ms. Dyson was responsible for, and maintained control over, O & I's bank accounts.

On October 10, 1997, O & I filed a petition for relief under Chapter 11 of the Bankruptcy Code. O & I was ultimately unsuccessful in its attempt to reorganize, and O & I's Chapter 11 case was converted to a case under Chapter 7 on April 10, 1998. During the pendency of the bankruptcy case, however, it was discovered that Kathy Dyson had used her position with O & I to receive unauthorized compensation and other benefits for herself and her family members.[2] After the fraud was discovered, the court approved the assignment by the Chapter 7 trustee to First BIDCO all of O & I's non-bankruptcy claims, including its cause of action against Mr. and Mrs. Dyson for the unauthorized transfers of money for their personal use.

After receiving the assignment of O & I's claims against Mr. and Mrs. Dyson, First BIDCO filed suit in Louisiana state court alleging that the Dysons converted and conspired to convert substantial sums of money from O & I.[3] On November 1, 1999, the State Court entered summary judgment in favor of First BIDCO against Mr. and Mrs. Dyson, finding that no issue of material fact was in dispute, and adjudging Mr. and Mrs. Dyson liable, *in solido*, to First BIDCO for damages in the amount of $76,819.91 plus costs and legal interest. Specifically, the State Court found that summary judgment was appropriate on First BIDCO's claims that the Dysons converted, and conspired to convert, the corporate funds of O & I.[4]

Mr. Dyson thereafter filed, in this Court, a petition for relief under Chapter 13 of the Bankruptcy Code. Kathy Dyson did not join the Chapter 13 petition.

First BIDCO, within 60 days of the date of the meeting of creditors under 341(a), then filed the instant adversary proceeding seeking to have "the community debt owed to it excepted from discharge in Mr. Dyson's Chapter 13 case." Neither Mr. nor Mrs. Dyson answered the complaint. After Entry of Default by the Bankruptcy Clerk's Office, First BIDCO filed a Motion for Default Judgment pursuant to Federal Rule of Civil Procedure 55[5].

The Court determines that it has jurisdiction to entertain the proceeding under 28 U.S.C. § 1334(b) and enter final judgment under 28 U.S.C. § 157(b)(2)(I), (O). This Court initially granted First BIDCO's Motion for Default Judgment and entered a Judgment of Default for First BIDCO.

---

2. The Court is not sure exactly who discovered the unauthorized compensation.

3. *"First Louisiana Business and Industrial Development Corporation, Inc. v. Kathy and Randy Dyson,"* No. 457, 716, Div. "A," 19th JDC, Parish of East Baton Rouge, State of Louisiana ("State Court Proceeding"). For purposes of these reasons, the Louisiana District Court to which the State Court Proceeding was assigned is referred to as the "State Court." Additionally, Randy Dyson is the same person as the Debtor herein, Jerry R. Dyson.

4. *See,* State Court Judgment, p. 2 (Downing, J.).

5. Federal Rule of Civil Procedure is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rules") 7055.

However, after reconsidering the applicable law, the Court, *sua sponte*, granted a new trial pursuant to Federal Rule of Bankruptcy Procedure 9023 [6]. The Court now determines that a default judgment is inappropriate, and that the complaint should be dismissed.

## II. INITIAL MATTERS REGARDING FIRST BIDCO'S CLAIM

### A. Issue Preclusion

In support of its Motion for Default Judgment, First BIDCO submitted a judgment from the Louisiana State Court casting Mr. and Mrs. Dyson liable for damages on the grounds of conversion and conspiracy to convert, in essence asserting that the Judgment precludes re-litigation of issues previously decided by the State Court, and based upon the preclusionary effect this Court should give to the State Court Judgment, First BIDCO is entitled to the relief it seeks.

The United States Supreme Court has stated, in determining the preclusive effect of prior federal court proceedings, that "collateral estoppel [issue preclusion] principles do indeed apply in discharge exception proceedings...." [7] The Fifth Circuit has extended similar treatment to state court judgments, noting that, "when a state court, after a 'full and fair' adjudication, determines an issue, a bankruptcy court may give that determination collateral estoppel effect." [8]

■ The preclusive effect to be accorded the State Court's Judgment toward the instant proceeding in this Court is required by 28 U.S.C. § 1738, which provides that the "judicial proceedings of any court of any ... state shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." The Supreme Court has noted:

.This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered. "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken." [9]

Therefore, this Court must give the same preclusive effect to the state court judgment as would another Louisiana state court.[10]

■ Louisiana has codified issue preclusion in Louisiana Revised Statute

---

6. Fed.R.Bankr.P. 9023 provides that Fed. R.Civ.P. 59 is applicable to cases filed under the Bankruptcy Code. Fed.R.Civ.P. 59(d) states that "No later than 10 days after entry of a judgment the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion." The Court specified in the Order granting a new trial that it had determined that the applicable law mandated a conclusion different from that incorporated into the original judgment.

7. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991).

8. *Garner v. Lehrer (In re Garner)*, 56 F.3d 677, 681 (5th Cir.1995).

9. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S.Ct. 1327, 1332, 84 L.Ed.2d 274 (1985) quoting, *Kremer v. Chemical Constr. Corp.* 456 U.S. 461, 481–482, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982).

10. *See, St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425 (5th Cir.2000).

§ 13:4231(3), which provides, in pertinent part:

Y(3)27 a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:

\*\*\*

(3) A judgment in favor of either the plaintiff or the defendant is conclusive in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.[11]

Issue preclusion under Louisiana law thus requires the presence of (1) a final judgment; (2) identity of the parties; (3) actual litigation of an issue; (4) judicial determination of that issue; and (5) that the judicial determination of the issue must have been essential to the disposition of the claim in the prior action.[12]

■ In this instance, the Judgment of the State Court relied upon by First BIDCO is a final judgment, and also, the parties are identical. It is apparent from the judgment that the issue of whether the Dysons had wrongfully converted O & I's corporate property was litigated and determined, on summary judgment procedure, in favor of First BIDCO, by the State Court. Moreover, by finding a conspiracy to convert on the part of the Dysons, the State Court, in essence, found that the Dysons intended to convert O &

I's property. Finally, by finding liability on the part of the Dysons, it was essential that the State Court make a finding that the Dysons converted and intended to convert O & I's corporate property. This Court finds that all the prerequisites for issue preclusion have been met, and that First BIDCO is entitled to estop any further litigation on the issue of conversion and intent to convert, and this Court is precluded from any finding contrary to the State Court Judgment.

## B. Willful And Malicious Injury Under § 523(A)(6)

■ Under Louisiana law, conversion depends upon fault. The Louisiana Supreme Court has identified the tort of conversion as the unlawful interference with the ownership or possession of a movable.[13] Despite its character as unlawful interference with ownership or possession of property, the tort of conversion, under Louisiana law, rests upon a finding of fault, not necessarily a finding of intent.[14]

■ While the tort of conversion under Louisiana law may be based on negligence as well as intent, the distinction is of no moment in this matter. In this case, the State Court not only found that Mr. and Mrs. Dyson were liable for conversion of O & I's property, but also, that they were liable for conspiracy to convert the corporate funds of O & I.[15] In essence, whether

---

11. La.Rev.Stat. § 13:4231.

12. *Id.; See also, Goodman v. Spillers*, 28, 933 (La.App. 2 Cir. 12/23/96), 686 So.2d 160; *accord, In re Whittaker*, 225 B.R. 131, 139 (Bankr.E.D.La.1998)

13. *See, Dual Drilling Co. v. Mills Equip. Invests., Inc.*, 98–0343 (La.12/1/98), 721 So.2d 853, 857; *Quealy v. Paine, Webber, Jackson & Curtis, Inc.*, 475 So.2d 756, 760 (La.1985).

14. *See, Dual Drilling*, 721 So.2d at 857, n. 3.

15. As a matter of substance, this Court cannot discern a recoverable cause of action for a conspiracy to convert corporate funds under Louisiana law. Under Louisiana Civil Code article 2315, the fountainhead of liability for conversion (*see, Dual Drilling*, 721 So.2d at 857, n. 3), to be ripe as a recoverable cause of action, the victim of the act and fault must also have sustained damages. *See, Walls v. American Optical Corp.*, 98–0455 (La.9/8/99), 740 So.2d 1262, 1269. A conspiracy to convert is nothing more than a plan to deprive, or damage, rather than an actual deprivation,

the tort of conversion may be based on negligence is immaterial in this case, because the State Court found as a fact that the Dysons were not merely negligent, but willfully interfered with the possession and ownership of O & I corporate property—its money.

■ Returning to § 523(a)(6), because the words "willful" and "malicious" modify the word injury, the Supreme Court has held that for a debt to fall within the ambit of § 523(a)(6), an action must be not merely negligent or even grossly negligent, but must to some degree be intentional.[16] According to controlling Fifth Circuit jurisprudence, an injury is "willful and malicious," as the phrase is used in § 523(a)(6), where the actor harbored "either an objective substantial certainty of harm or a subjective motive to cause harm."[17]

Applying that standard to the instant case, it is clear that the Dysons, by intending to convert O & I's corporate property for their own use, intended the very harm which happened—O & I suffered the loss of that property. Therefore, the Dysons harbored a subjective motive to cause harm, and indeed caused that very harm to occur. Thus, the debt owed by the Dysons to First BIDCO is a debt arising on account of a willful and malicious injury as that phrase is used in § 523(a)(6).

Finding, however, that the debt is of the kind described by § 523(a)(6) does not end

this Court's inquiry. The Court now turns to the merits of First BIDCO's Motion for Default Judgment.

## III. THE MOTION FOR DEFAULT JUDGMENT

■ Federal Rule of Bankruptcy Procedure 7055, and by incorporation, Federal Rule of Civil Procedure 55(b), permits a bankruptcy court to enter a judgment of default if a party defendant fails to answer or otherwise defend an action. A default judgment, however, is not to be granted as a matter of right merely because a party fails to answer or defend such suit.[18] Any court called upon to enter a judgment of default must ascertain whether the plaintiff has stated a claim for which relief can be granted, and if so, whether the averments made thereto satisfy the Court that, if true, the plaintiff would be entitled to the relief that it seeks.[19] Thus, the first task for this Court is to determine whether First BIDCO has stated a claim for which this Court may grant relief. Secondly, this Court must determine whether, on the basis of the averments and evidence before it, First BIDCO is entitled to that relief.

### A. The Complaint States A Claim For Which Relief Can Be Granted

First BIDCO's complaint alleges that it seeks a declaration from this Court except-

---

*i.e.*, actual damages. It is unclear whether a plan to damage, standing alone, may provide the basis for an award of damages, when by definition, if aggrieved conduct is merely a plan to act, then by definition the actual act causing damage has not come to fruition, and thus, the victim has not suffered damage (and therefore, is not a victim). However, this Court infers from the finding that the Dysons engaged in a conspiracy, that the State Court found, and incorporated into its Judgment, that the Dysons intended to unlawfully interfere with the possession or ownership of O & I's corporate property, rather than finding

that the Dysons were negligently or recklessly converted property.

16. *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

17. *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir.1998); *see also, Caton v. Trudeau (In re Caton)*, 157 F.3d 1026, 1030 (5th Cir.1998).

18. *See, Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir.2001).

19. *See, id.*

ing a community debt owed by the Dysons from discharge (should such discharge be entered).[20] While First BIDCO's complaint is couched in terms of an exception to discharge, the real nature of the cause of action is that First BIDCO wishes this Court to determine and declare that the discharge to be granted in Mr. Dyson's Chapter 13 case (when and if the provisions for entering discharge are met according to the standards applicable to Chapter 13 cases)[21] will not affect First BIDCO's attempts to collect its debt, post-discharge, against after-acquired, *i.e.*, post-petition, community property of the Dysons, or any separate property of Mrs. Dyson.

The complaint suggests, then, that even if this Court enters a discharge in Mr. Dyson's Chapter 13 case, thereby discharging Mr. Dyson personally from liability on the debt owed to First BIDCO,[22] Mrs. Dyson will remain personally liable, in full, for the debt, and because of § 524(a)(3), so will the community existing between her and Mr. Dyson (for as long as the community exists). Therefore, the effect of Mr. Dyson's potential discharge according to First BIDCO is that only his separate property will be insulated post-discharge from efforts to collect the First

BIDCO judgment, while the community assets of Mr. and Mrs. Dyson and Mrs. Dyson's separate property will remain liable for the debt.

Generally speaking, § 524(a)(3) provides that the entry of a discharge in Mr. Dyson's Chapter 13 case will cause Mrs. Dyson to receive a limited discharge, commonly referred to as the "split discharge,"[23] *i.e.*, barring collection against community property (half of which is hers) even though she did not file bankruptcy. Thus, the gravamen of the complaint is that First BIDCO wishes this Court to declare that the debt owed by the Dysons to First BIDCO will not be affected by the injunctive provisions of § 524(a)(3), barring collection against post-petition community property, should this Court enter a discharge in Mr. Dyson's Chapter 13 bankruptcy case. Accordingly, the Complaint states a claim for which relief may be granted.

## B. Entitlement To The Relief Sought

### 1. The "Split Discharge"; How It Fits Within The Statutory Scheme

Having found that the complaint by First BIDCO states a claim for which the

---

20. *See*, Complaint, ¶ 12, Docket No. 8.

21. *See*, § 1328(a), which provides:
(a) As soon as practicable after completion by the debtor of all payments under the plan, unless he court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—
(1) provided for under section 1322(b)(5) of this title;
(2) of the kind specified in paragraph (5), (8), or (9) of section 523(a) of this title; or

(3) for restitution, for a criminal fine, included in a sentence on the debtor's conviction of a crime.

22. Under § 1328(a)(2) only those debts specified in § 523(a)(5), (8), and (9) are excepted from the Chapter 13 discharge. Thus, even if a debt is of the kind specified in § 523(a)(6), as is the debt in the instant case, a Chapter 13 discharge will discharge that debt.

23. *See*, House Report No. 95–595, 95th Cong., 1st Sess. (1977), 356–6 and Senate Report No. 95–989, 95th Cong., 2nd. Sess. (1978), 80, U.S.C.C.A.N.1978, pp. 5787, 5866, 6321 ("Subsection (a) also codifies the split discharge for debtors in community property states.").

Court may grant relief, the Court turns to whether First BIDCO is entitled to the relief it seeks. To determine whether the debt owed to First BIDCO by the Dysons will be affected by the split discharge, the Court must start by examining the entirety of the general discharge provisions under § 524(a).

The first provision of § 524, § 524(a)(1) voids personal judgments with respect to discharged debts.[24] Section 524 continues by imposing an injunction against the continuation or commencement of any action to collect or otherwise recover a discharged debt *as a personal liability of the debtor.*[25] From these general (and seemingly overarching) effects of the entry of discharge, the statute proceeds to create, through § 524(a)(3), the "split discharge."

Section 524(a)(3) provides:

(a) A discharge in a case under this title—

\*\*\*

(3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community

claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

The phrase, "community claim," is defined by the Bankruptcy Code as a "claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not there is any such property at the time of the commencement of the case."[26] Section 541(a)(2), in turn, includes within the estate:

(2) all interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an

---

**24.** § 524(a)(1) states:

(a) A discharge in a case under this title—
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt is waived; . . .

**25.** § 524(a)(2) provides that a discharge entered in a debtor's case:

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; . . .

**26.** *See,* § 101(7). The term "claim," as that term is used in § 101(7) is defined by the Bankruptcy Code, generally, as a right to payment or equitable remedy. *See,* § 101(5).

allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

Thus, a community claim is a right to payment for which community property is, or may be, liable. Therefore, the effect of § 524(a)(3) is to enjoin the commencement, continuation, etc. of an action to collect on a community claim that arose before the filing of the petition, against property acquired post-petition that fits the description of § 541(a)(2).[27]

The plain language of § 524(a)(3), up to the "exception" clause, prohibits the holder of a community claim from continuing or commencing an action to collect, enforce, or otherwise attempting to recover, that debt from the community property of either the debtor or the non-filing spouse (acquired after the filing of the petition for relief). The Court pauses to point out that, as it regards the debtor personally, § 524(a)(3) may be unnecessary. Surely, even without § 524(a)(3), the debtor's interest in the post-petition community should be protected from pre-bankruptcy creditors. Sections 524(a)(1) and (2) would prohibit the prosecution of community claims and the enforcement of judgments recognizing community claims against the debtor personally, or against the debtor's interest in the post-petition community, because community claims, generally speaking, are not *in rem* claims; they are claims for which the debtor is personally liable, and which are enforceable upon community property and separate property. Therefore, *vis-a-vis* the debtor (if the debtor has a spouse who does not file with the debtor), §§ 524(a)(1) and (2) effectively block a community creditor's attempt to

satisfy its pre-bankruptcy claim from the post-petition community property of the debtor, because to do so would require, or would be, an act to recover a discharged claim because of the debtor's personal liability.

At this point, it bears mentioning the interplay of another subsection of § 524, § 524(e). Section 524(e) provides:

(e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

Section 524(e), thus, articulates that the discharge of a debtor does not affect the rights of creditors of the debtor, whose claims are discharged, from pursuing enforcement of their claims against other entities, or non-debtor property who or which may be liable to that creditor for that debt.[28] Therefore, although §§ 524(a)(1) and (2) would protect the debtor personally, including the debtor's interest in the post-petition community, § 524(e) allows the creditor to seek remuneration for its debt from other sources.

The interesting effect of § 524(e) is that it would allow a community creditor to enforce community claims against the non-filing spouse's interest in the post-petition community, assuming that the non-filing spouse is him/herself personally liable for the debt. Thus, under § 524(e) (if there was no § 524(a)(3)), a debtor who obtains a discharge could be forced to live in community with his or her community creditors, who could, to the extent applicable under state law enforcement rights, displace the non-filing spouse's interest in the post-petition community because § 524(e)

---

27. The Court terms such property the "post-petition community."

28. The term "entity" is defined by the Bankruptcy Code as including a "person, estate, trust, governmental unit, and United States trustee." *See,* § 101(15).

allows the community claimant the right to seek redress from sources other than the debtor even though the debtor has received a discharge from that debt and is relieved of any personal liability on that debt.

Depending upon one's social perspective, resolution of such a condition might or might not be warranted. It cannot be argued, however, that there would be significant limitation imposed upon the debtor's "fresh start" if the "fresh" part was comprised of a surrogate spouse made up of the composite of community creditors. Section 524(a)(3) mends this anomaly by extending the protections afforded the debtor under §§ 524(a)(1) and (2) to the debtor's non-filing spouse's interest in the post-petition community as well. So while probably unnecessary, strictly speaking, to protect the debtor's post-petition interest in the community property from the hands of community creditors, § 524(a)(3) is a Congressional embodiment of the determination that in community property states, the entirety of the post-petition community should be insulated from community claims that are discharged in the debtor's case (and that the debtor's fresh start should include the continuation of the financial community with the actual spouse rather than with community creditors).

The Court notes that Louisiana is a community property state.[29] In Louisiana, community property comprises, *inter alia,* property acquired during the existence of the community through the efforts of either spouse, or that property which is acquired with community property.[30] Thus, when a married individual (subject to the legal regime of community property) files bankruptcy in Louisiana, all community property of *both* spouses as of the date of filing the bankruptcy petition, becomes property of the debtor's estate, whether or not both spouses file for relief.[31] Upon entry of discharge, the post-petition community, including the interests of the non-filing spouse in such, is insulated from collection activity on the part of a pre-petition community claimant by the discharge injunction under § 524(a)(3).

First BIDCO is a pre-petition creditor of both spouses. First BIDCO is the holder of a fixed and liquidated judgment of conversion against both Mr. and Mrs. Dyson, *in solido,* the basis of which arose prior to the filing of Mr. Dyson's Chapter 13 case. Under Louisiana law, were it not for Mr. Dyson's intervening bankruptcy case, First BIDCO would be able to seek redress from either spouse's separate property and from the community property of the spouses.[32] Thus, First BIDCO is the holder of a community claim against the Dysons, jointly and individually.

Prior to satisfying his obligation to First BIDCO, Mr. Dyson filed bankruptcy under the provisions of Chapter 13. Mr. Dyson scheduled and listed the debt owed to

---

**29.** *See,* La.Civ.Code art. 2327 ("The legal regime is the community of acquets and gains ...")

**30.** *See,* La.Civ.Code art. 2338. While property of the spouses may be classified as separate property, the Louisiana Civil Code contains a presumption that property in possession of the spouses during the existence of the community regime is community property. *See,* La.Civ.Code art. 2340.

**31.** *See,* § 541(a)(2).

**32.** *See,* La.Civ.Code art. 2345 ("A separate or community obligation may be satisfied during the community property regime from community property and from the separate property of the spouse who incurred the obligation.") Because the obligation is solidary, meaning both spouses are liable for the whole debt, La.Civ.Code art. 1790, First BIDCO is entitled to look to either Mr. or Mrs. Dyson's separate property as well as the community property of the spouses.

First BIDCO as a community claim. First BIDCO also filed a proof of claim in the amount of its judgment against the Dysons. This Court has confirmed a Chapter 13 plan submitted by Mr. Dyson which proposed to pay unsecured creditors, of which class First BIDCO is a member, a portion of the total debt owed to them. Accordingly, if Mr. Dyson successfully completes all of the obligations imposed by the confirmed Chapter 13 plan, this Court will enter a discharge under § 1328(a).[33]

A discharge under § 1328(a) discharges all personal liability of the debtor on debts provided for by the plan or disallowed under § 502, except a debt:

(1) provided for under section 1322(b)(5) of this title;

(2) of the kind specified in paragraph (5), (8), or (9) of section 523(a) of this title; or

(3) for restitution, for a criminal fine, included in a sentence on the debtor's conviction of a crime.[34]

In this case, because the debt was provided for in the confirmed plan, a discharge under § 1328(a) will discharge the debt of First BIDCO because it is not of a nature excepted from the effect of the discharge under § 1328(a). The debt to First BIDCO is not a debt provided for under § 1322(b)(5), which refers to long-term secured or unsecured debt, the last installment of which is due after the date of the final payment under the debtor's Chapter 13 plan,[35] and the debt is not one listed within § 1328(a)(2) (which provides that only certain enumerated kinds of debts, child support/alimony, student loans, and injury caused by the debtor's use of an automobile while intoxicated, normally rendered non-dischargeable in a Chapter 7 case, are excepted from the discharge under § 1328(a)).[36] Finally, the debt owed to First BIDCO arises from a civil judgment of conversion, not as a restitutional obligation imposed as a result of criminal conviction and sentencing and is not excepted from discharge under § 1328(a)(3).

Upon completion by Mr. Dyson of his Chapter 13 plan payments, then, he will be discharged from his personal liability for the debt to First BIDCO. Even without § 524(a)(3), the discharge under § 1328(a) will preclude First BIDCO from collecting its debt against Mr. Dyson's property (both his separate property and the post-

---

**33.** *See,* 1328(a) ("As soon as practicable after completion by the debtor of all payments under the plan, ... the court ***shall*** grant the debtor a discharge of all debts ...") (emphasis added).

**34.** § 1328(a).

**35.** *See,* § 1328(a)(1). The debtor's plan does not propose this treatment.

**36.** The provisions of § 523(a) regarding non-dischargeable debts pertinent to § 1328(a)(2) provide that debts are non-dischargeable if it is:

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or chile, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement ...

\*\*\*

(8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend ...

(9) for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance.

petition community).[37] Or, put another way, the First BIDCO debt will not be excepted from discharge *vis-a-vis* Mr. Dyson in this case, as long as the Court enters a discharge under § 1328(a).[38] As for Mrs. Dyson, § 1328(a) does not purport to extend the effect of the filing spouse's discharge to the separate property of the non-filing spouse, because she is not a debtor. Her separate property is subject to collection efforts free of the effect of Mr. Dyson's discharge, should there be one.[39]

To recap, the discharge under § 1328(a) discharges the First BIDCO claim because that claim does not fall within the ambit of any of the exceptions to the § 1328(a) discharge contained within subsections (a)(1), (2), and (3) of § 1328. Because § 524(a)(1) and (2) cover discharges under § 1328(a), Mr. Dyson's interest in the post-petition community and in his separate property (if any) seems insulated from enforcement actions by community claimants seeking to satisfy a pre-bankruptcy obligation owed to them. Section 524(a)(3) extends the effect of the discharge under § 1328(a) to the entirety of the post-petition community between Mr. Dyson and Mrs. Dyson. In certain circumstances, however, § 524(a)(3) does not extend Mr. Dyson's discharge to the entirety of the post-petition community.

It is these circumstances, *i.e.*, those under which § 524(a)(3) does not extend Mr.

Dyson's discharge (and actually, as will be shown, retracts the discharge to the extent it protects Mr. Dyson's or the filing-spouse's interest in the post-petition community), that the Court must explore. What follows is the Court's attempt to figure the meaning of what has proven (to it) to be one of the most confounding provisions of the Bankruptcy Code.

### 2. Exceptions to the "Split Discharge"—Or Non–Split Dischargeability

■ As stated previously, although the general effect of § 524(a)(3) is to preclude collection efforts by a pre-petition community claimant against the post-petition community of the debtor and his/her spouse, applicability of § 524(a)(3) to post-discharge collection efforts is not all-encompassing. The statute provides that post-discharge efforts to collect community claims are enjoined *except* as to:

a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1) of this title, or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor ... [40]

First BIDCO argues that because the debt is one excepted from discharge under

---

**37.** *See,* § 524(a)(2) ("A discharge ... operates as an injunction against the commencement or continuation of an action ... to collect, recover or offset any debt discharged under § 1328 as a personal liability of the debtor ...").

**38.** The court refrains from discussing § 1328(b), other than to say that upon determination that a hardship discharge under § 1328(b) should be entered, creditors holding debts that can be excepted from discharge under § 523(c) may file and prosecute com-

plaints to cause the § 523(c) debts to be excepted from the § 1328(b) hardship discharge. *See,* Fed.R.Bankr.P. 4007(b).

**39.** Though the Court has little information about the separate property of Mrs. Dyson, it appears there is not much, if any, separate property owned by Mrs. Dyson which would be available to satisfy First BIDCO's claim. That is not to say there never will be.

**40.** § 524(a)(3).

§ 523, and because it is one covered by § 523(c), the debt should be excepted from the "split discharge" in this case because First BIDCO filed an adversary proceeding within the time proscribed by Federal Rule of Bankruptcy Procedure ("Bankruptcy Rule") 4007. In essence, First BIDCO seeks recognition that its community claim against the Dysons is excepted from the effect of § 524(a)(3), and the full effect of its rights against the post-petition community is preserved.

### a. "That Is Excepted From Discharge"—The Case Concerning The Debtor

An examination of the language of § 524(a)(3) reveals that the statute requires a two-tiered analysis. First, the statute directs that the Court determine whether the community claim "is excepted from discharge. . . ." If the Court finds that the claim is one that "is excepted from discharge . . . ," no further analysis is necessary; the claim is excepted from the general effect of § 524(a)(3). If, however, the debt is not one that "is excepted from discharge . . . ," the statute then directs the court to analyze whether the debt "would be so excepted . . ." in a hypothetical bankruptcy case "concerning" the non-debtor spouse. If the debt is one that "would be so excepted . . ." in a case concerning the non-filing spouse, then, again, the claim is excepted from the general effect of § 524(a)(3).

Accordingly, this Court must focus, initially, upon the introductory phrase, "that is excepted from discharge. . . ." Scrutiny of that phrase, however, yields the conclusion that the phrase is more complicated than it originally appears.

Section 524, in general, delineates the effect of the entry of a discharge in a case under title 11, including one entered under § 1328 (which contains both the run-of-the-mill, expanded, Chapter 13 discharge, i.e., § 1328(a), and the hardship discharge under § 1328(b)). The phrase, "that is excepted from discharge . . . ," in § 524(a)(3) appears to refer to the discharge to be (or that is) entered in the debtor-spouse's case. Though this interpretation of the phrase "that is excepted from discharge . . ." seems common-sensical enough, the Court notes that a problem exists with that interpretation.

Section 523, by its own terms, does not apply to a discharge under § 1328(a).[41] Technically, then, no debt in a Chapter 13 case is excepted from discharge under § 523; debts excepted from discharge in a Chapter 13 case are excepted because of a specific mention within the provisions of § 1328(a), in particular § 1328(a)(2), which excepts from the Chapter 13 discharge a limited category of debts described by § 523.

This statutory fact sets up two plausible first blush readings of the "is excepted from discharge . . ." phrase. The first interpretation is that the phrase refers to the nature of the debt itself, or whether the debt is one of those listed in § 523, rather than whether the debt is actually excepted from the actual discharge rendered (or to be rendered) in the debtor's actual case. Under this reading, the phrase, "is excepted from discharge under section 523 . . ." means "is [a debt of a kind and nature listed within and] excepted from discharge under [the terms of] section 523. . . ." Thus, the applicability of the post-petition community injunction under § 524(a)(3) to a particular debt would be determined by reference to whether the debt falls within the provisions of § 523 as

---

**41.** § 523(a) states, "A discharge under section 727, 141, 1228(a) [,] 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt . . ."

of the commencement of the case, not whether the debt was actually excepted from the debtor's discharge in the debtor's actual case. The second possible interpretation is that because no debts are excepted from discharge under § 523 in Chapter 13 cases (except for those in which a hardship discharge is entered pursuant to § 1328(b)), the phrase, within the Chapter 13 context, means that only debts excepted from discharge under § 1328(a)(1) are excepted from discharge under the "is excepted from discharge . . ." phrase.

To address these possible alternative interpretations, it is necessary to examine the statutory language in detail. The Court notes first that the "is excepted from discharge . . ." language refers not only to the phrase "under section 523," but also to other specific statutory provisions excepting certain debts from discharge, namely §§ 1228(a)(1), and 1328(a)(1). To determine whether a debt is excepted from discharge under §§ 1228(a)(1) or 1328(a)(1), reference must be made to §§ 1222(b)(5), 1222(b)(9), and 1322(b)(5), each of which, in turn, refers to specific actions taken by a debtor within a specific bankruptcy case.[42] Each of these sections requires that the debtor specifically choose

to treat the debt in the manner provided for under those sections, *i.e.*, that the debtor proposes a treatment for the debt in the debtor's plan according to those statutory provisions. Otherwise, the debt will not be excepted from the discharge entered or to be entered in the debtor's bankruptcy case. Thus, because of the interplay of the provisions of §§ 1222(b)(5), 1222(b)(9), or 1322(b)(5), with §§ 1228(a)(1) and 1328(a)(1), a debt excepted from discharge under §§ 1228(a)(1) or 1328(a)(1) cannot exist as a general type, or category, of debt; it can only exist by virtue of being created by an actual choice made by an actual debtor in an actual bankruptcy case. Therefore, the language, "is excepted from discharge under . . . [§§ ] 1228(a)(1) or 1328(a)(1)," cannot be construed as describing a type of debt by reference to a statutory provision within which it is listed, but can only be construed as describing an actual debt (or debts) chosen by an actual debtor to be provided for in a manner which would cause that debt to fall within the provisions of §§ 1228(a)(1) or 1328(a)(1).

Consequently, construing the phrase, "a community claim that is excepted from discharge under section 523 . . . ," as refer-

---

42. § 1228(a)(1) states:
   (a) . . . the court shall grant the debtor a discharge of all debts . . . , except any debt—
   (1) provided for under section 1222(b)(5) or 1222(b)(9) of this title . . .
   In turn, § 1222(b) provides, relevantly:
   (b) Subject to subsections (a) and (c) of this section, the plan may—
   ***
   (5) provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;
   ***

(9) provide for payment of allowed secured claims consistent with section 1225(a)(5) of this title, over a period exceeding the period permitted under section 1222(c).
   § 1328(a)(1) excepts debts from discharge which are provided for under § 1322(b)(5). Section 1322(b)(5), in turn provides:
   (b) Subject to subsections (a) and (c) of this section, the plan may—
   ***
   (5) . . . provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due.

ring to the general category of debts listed and described under § 523 sets up an interpretive conflict between the reference to "section 523," and the reference to "[§§ ] 1228(a)(1) and 1328(a)(1)." Such a construction requires that the phrase, "is excepted," be construed two different ways within the same sentence—as a reference to a listing within a statute (the reference to § 523) and as a reference to the particular case (the reference to § 1228(a)(1) and 1328(a)(1)).

To alleviate this interpretive conflict, the phrase, "is excepted," must be construed consistently, that is, as a reference to the particular case of the actual debtor. Thus, the "is excepted from discharge ..." phrase is chapter-specific because it is case-specific. Whether a particular debt is excepted from the general injunctive prohibition on collection against the post-petition community in § 524(a)(3) depends not on the nature of the debt claimed to be excepted, *i.e.*, whether the debt is of the kind described by § 523, but rather, exception from the injunction is determined by reference to the particular discharge rendered, or to be rendered, in the debtor's case.

Moreover, if the effect of § 524(a)(3), as it regards the debtor's actual case, was limited by a general reference to § 523, then the post-petition community would be exposed to the entire range of debts listed in § 523, though those debts would be discharged as to the personal liability of the debtor under § 1328(a). To clarify, if the "is excepted" phrase is actually describing the § 1328(a)(1) claim that is actually describing a debt provided for within the debtor's plan pursuant to § 1322(b)(5), but is referring generally to those types of debts listed in § 523 without consideration

of whether they are actually discharged in the Chapter 13 case, the scope of the discharge rendered in the debtor's case will be limited by the entire range of § 523 debts, though some of those debts are dischargeable under § 1328(a). This would mean that notwithstanding the § 1328(a) discharge, the post-petition community, *including the debtor's interest in such,* would be liable for all debts listed within § 523, so that the only property that is affected by the § 1328(a) discharge is the debtor's separate property (and the pre-petition community)—all of the post-petition community is liable for § 523 community claims because the split discharge would be limited by § 523 in its entirety.

This interpretation, however, poses a problematic interrelationship between §§ 1328(a) and 524(a)(3), and further, generates a conflict between §§ 524(a)(3) and 524(a)(2). Section 1328(a) provides the expanded Chapter 13 discharge, effectuated by means of the debtor's completion of plan payments. If the "is excepted" phrase refers generally to the debts listed in § 523, as opposed to the particulars of the debtor's discharge in the debtor's actual case, what § 1328(a) discharges, § 524(a)(3), in effect, un-discharges, as to the post-petition community. If community claims that are listed in § 523 can be enforced against the entirety of the post-petition community, then the personal liability of the debtor for the community claim, though it be discharged by operation of § 1328(a), is not discharged if the claim is of the kind listed in § 523, because the personal liability can be enforced against the post-petition community. In other words, § 524(a)(2) would prohibit commencement of an action to collect the personal liability for a discharged debt,[43]

---

**43.** § 524(a)(2) states:
    (a) A discharge in a case under this title—
        ***

(2) operates as an injunction against the commencement or continuation of an action, ... to collect, recover or offset

while § 524(a)(3) would authorize the institution of an action to collect a personal liability that was discharged from the debtor's post-petition community property. This inter-relational statutory conflict is clearly (or plainly) untenable.

Likewise, the second alternative, *i.e.*, community property injunction applies only to debts excepted by § 1328(a)(1) in Chapter 13 cases, is not supportable. If because § 523 is inapplicable to a discharge under § 1328(a) the only debts excepted from the effect of § 524(a)(3) are those excepted from discharge under § 1328(a)(1), the injunction protecting the post-petition community would be broader than that provided by the debtor's discharge. Because debts are excepted from the § 1328(a) discharge by the terms of § 1328(a) and not "under section 523," a community debt excepted under § 1328(a)(2) and (3) would, under this second alternative interpretation, nonetheless be enjoined from collecting against the post-petition community. The "super-discharge" in Chapter 13 cases would, in effect, be doubly-super, because the only claims that would be exercisable against the post-petition community would be those excepted from discharge under § 1328(a)(1).

This interpretation, of course, creates the reverse statutory conflict identified as plaguing the first alternative interpretation—what § 1328(a) does not discharge, § 524(a)(3) discharges (as it regards the post-petition community). Under the second interpretation, debts excepted from the § 1328(a) discharge, and therefore, subject to collection activities under § 524(a)(1) and (2) would be enjoined from

collection activities against the post-petition community. Rather than constricting the discharge, the second interpretation would enhance the discharge as it applies to the post-petition community. Effectively, the second interpretation limits collections of debts apparently excepted from discharge under §§ 1328(a)(2) and (3) to the debtor's (and non-debtor's) separate property, only, while enjoining collection against (or discharging) the post-petition community. While entirely within Congress' power to do, such an interpretation of the "is excepted from discharge ..." phrase seems to go way beyond the purpose of § 524(a)(3); that is, § 524(a)(3) expands the protections of §§ 524(a)(1) and (2) beyond merely the debtor's interest in the post-petition community, but to the entirety of the post-petition community as a whole. Instead, the second interpretation expands the protections of §§ 524(a)(1) and (2) to the entirety of the post-petition community even though the provisions of §§ 524(a)(1) and (2), themselves, do not apply to the debt at issue because such debt was not discharged under § 1328(a).

The problems inherent in interpreting the "is excepted from discharge under section 523 ..." phrase as either excepting from the effect of § 524(a)(3) all debts listed within § 523, or excepting no debt that is described in § 523 because no debt discharged under § 1328(a) is discharged "under section 523" (instead of whether the debt is actually discharged in the actual case of the filing-spouse), clearly preclude either interpretation. The Court concludes that the most reasonable inter-

---

any such debt as a personal liability of the debtor....

By using the phrase, "any such debt," § 524(a)(2) references the preceding subsection of § 524(a), § 524(a)(1), which voids a judgment to the extent that the judgment is a

determination of the personal liability of the debtor on a debt discharged under "section 727, 944, 1141, 1228 or 1328...." Therefore, the phrase, "any such debt," in § 524(a)(2) refers to a debt discharged under "section 727, 944, 1141, 1228, or 1328...."

pretation of the "is excepted from discharge ..." phrase is that it means that a community claim that is excepted from discharge under the **applicable** provisions of § 523, 1228(a)(1), or 1328(a)(1), in the debtor's actual case, is excepted from the general effect of § 524(a)(3).

This interpretation makes the most sense for several reasons. First, the reading renders § 524(a)(3) internally consistent. The references to §§ 1228(a)(1) and 1328(a)(1), which can only be references to the actual case of the actual debtor because they are dependent upon an actual choice made by the actual debtor in the actual case, are harmonized with the reference to § 523, which, although statutorily inapplicable to a discharge under § 1328(a), is made applicable to a limited extent by the incorporation of §§ 1328(a)(2), and (9) within § 1328(a)(2), and thus, directs that debts that are actually excepted from discharge under § 523 (because of its incorporation into the § 1328(a) discharge by § 1328(a)(2) in Chapter 13 cases) are excepted from the general effect of § 524(a)(3) as well. Second, there is no conflict created with the discharge provisions of § 1328(a) or with subsections (a)(1) and (a)(2) of § 524. The effects of the discharge granted under § 1328(a) are not undermined by means of a single phrase within the statutory provision governing the post-bankruptcy rights of community creditors against the post-petition community. Neither, too, are the effects of the discharge under § 1328(a) extended beyond that granted under the first two subsections of § 524(a) by the happenstance that the debtor and his/her spouse live in a community property state.

Notwithstanding the inapplicability (by its terms) of § 523 to a discharge entered pursuant to § 1328(a), the "is excepted from discharge ..." phrase must be interpreted as case-specific. Thus, the proper reading of the phrase, "is excepted from discharge ...," requires that the phrase mean that the general injunctive prohibition on collection efforts against the post-petition community is limited by excepting from its effect any debt actually excepted from the debtor's discharge under § 523, as § 523 may be made applicable by other provisions of the Bankruptcy Code, *i.e.*, through § 1328(a)(2). In this sense, although § 524(a)(3) does not specifically reference § 1328(a)(2), § 1328(a)(2) is inherently incorporated into the reference within § 524(a)(3) to "section 523." Thus, a debt that is excepted from discharge under § 523 (to the extent applicable) or under §§ 1228(a)(1) or 1328(a)(1), *in the debtor's actual case,* is excepted from the injunctive effect of § 524(a)(3), and can be collected from the post-petition community of the debtor and his/her spouse.

In the instant case, it cannot be disputed that if Mr. Dyson successfully completes his Chapter 13 plan and thereby receives a discharge pursuant to the provisions of § 1328(a), the debt held by First BIDCO will be discharged, because debts described under § 523(a)(6) are not excepted from discharge under § 1328(a) (as opposed to a discharge under §§ 727, 1228(a), 1228(b), or 1328(b)).[44] While the debt is generally of a kind described by § 523, it will not, however, be excepted from Mr. Dyson's discharge because § 1328(a)(2) specifically limits the applica-

---

**44.** *See,* § 727(b), which provides, "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts ..."; *see also,* § 1228(a)(2) (discharge of all debts except any debt "of the kind specified in section 523(a) ..."); § 1228(c)(2) (discharge under § 1228(b) discharges all debts except those "of a kind specified in section 523(a) ...") § 1328(c)(2) (discharge under § 1328(b) discharges all debts except those "of a kind specified in section 523(a) ...").

bility of § 523 to a discharge under § 1328(a) to only those provisions set forth in § 523(a)(5), (8), and (9). In the context of § 524(a)(3), then, the debt owed to First BIDCO is not a debt which "is excepted from discharge under section 523, 1228(a)(1) or 1328(a)(1) ...," and therefore, does not fall within the first exception to the applicability of the general injunctive provisions of § 524(a)(3).

### b. "That Would Be So Excepted"— The Hypothetical Case Concerning The Debtor's Spouse

While § 524(a)(3) states that debts excepted from discharge pursuant to § 523 or §§ 1228(a)(1) or 1328(a)(1), in the case of the filing-spouse, are not subject to the general injunction on collection of the debt against the post-petition community, § 523(a)(3) goes further to state that even if the debts are not excepted from discharge under §§ 523, 1228(a)(1), and 1328(a)(1) in the actual bankruptcy case of the filing-spouse, if the debt "would be so excepted ... in a case concerning the debtor's spouse," the debt is excepted from the applicability of the injunction protecting the post-petition community. Thus, in addition to requiring the Court to examine the debt in the context of the discharge in the filing-spouse's case, the statute also requires the Court to analyze whether the debt would be excepted from discharge in a hypothetical case involving the non-debtor spouse.

Although the statute mandates the Court analyze a hypothetical case involving the debtor's non-filing spouse, the statute does not specify what type of case must the court analyze. The problem faced by this Court requires a determination of

what kind of case the statute refers to when it states that debts which "would be so excepted ... in a case concerning the debtor's spouse" are not subject to the post-discharge injunction prohibiting collection against the post-petition community of the debtor and his/her non-filing spouse. This Court, therefore, must determine, as a matter of first impression within the reported decisions (as best the Court can tell), whether the hypothetical bankruptcy case of the non-filing spouse delineated by § 524(a)(3) is to be seen as having been filed (hypothetically) in the same chapter under which the discharge will be granted the debtor-spouse, or whether the hypothetical case is to be analyzed without consideration of the actual chapter under which the debtor-spouse filed.[45] To rephrase: are community debts of the kind normally excepted from discharge under § 523, excepted from the "split discharge," although in the bankruptcy case of the filing-spouse, the debts would be discharged under 11 U.S.C. § 1328(a), or does the scope of the discharge in the bankruptcy case determine the scope of the "split discharge" to which the non-filing spouse is entitled?

As has been shown, the debt owed to First BIDCO by Mr. and Mrs. Dyson, though it falls within the category of debts described by § 523(a)(6) and is ordinarily rendered non-dischargeable in a Chapter 7 or Chapter 12 case (assuming a timely filed complaint prosecuted to judgment), will nevertheless be discharged upon entry of a discharge under § 1328(a). The same would be true, with respect to Mrs. Dyson, had she elected to join Mr. Dyson's petition. First BIDCO argues, however, that the statute requires the hypothetical case

---

**45.** *See, Midi Music Center, Inc. v. Smith (In re Smith),* 140 B.R. 904, 908, n. 4 (Bankr. D.N.M.1992) (posing the "interesting question," but finding it unnecessary to determine the issue based on the facts present). We cannot find a case dealing with this question. If we have missed one, we apologize.

to be viewed from a frame of reference which the Court terms an "omnibus" viewpoint; that the hypothetical case of the non-filing spouse is not limited, or determined by, the discharge granted (or to be granted) in the filing-spouse's case. Rather than a "case-specific" approach, First BIDCO argues that in the hypothetical case the actual discharge of the filing spouse is irrelevant; the non-filing spouse is not insulated from collection efforts against the post-petition community by community creditors who hold debts of the kind specified in §§ 523, 1228(a)(1) or 1328(a)(1).[46]

Recall, the statute excepts from its effects those debts actually excepted from the discharge in the filing-spouse's case, or those:

> that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse...."

According to First BIDCO, the statute requires the imposition of the entirety of § 523 to the hypothetical case; otherwise, it argues, the language "in accordance with the provision of section 523(c) and 523(d)" would be nullified (at least when the filing-spouse's case a Chapter 13 case). Because there is no applicability limitation within this phrase, First BIDCO suggests that it applies to all hypothetical cases, regardless of the applicability of §§ 523(c) and 523(d) to the actual case of the debtor-spouse. To give effect to this language, it is necessary that the hypothetical case of the non-filing spouse be seen to be subject to all of the § 523 exceptions to discharge.

To restate, First BIDCO argues that regardless of the scope of the debtor's actual discharge, the hypothetical case of the non-filing spouse is a case in which the hypothetical debtor is subject to the imposition of § 523, all of it, because the reference to "sections 523(c) and 523(d)" within the context of the reference to the hypothetical case of the non-filing spouse. Applicability of the entirety of § 523 to the hypothetical case is necessary to give meaning to that part of the statute.

### i. The "Omnibus" Viewpoint

The Court has settled on the designation, "omnibus" viewpoint, because First BIDCO (correctly) grounds its analysis upon the assumption that the Court cannot guess what chapter the hypothetical case would have been filed under, since it was not actually filed. From this assumption, First BIDCO concludes that the hypothetical case should be seen as "chapter-less," a proverbial "kitchen-sink" type bankruptcy case, or, in the Court's parlance, an "omnibus" case.

Under the "omnibus" approach to the hypothetical case, regardless of the chapter under which the filing-spouse initiated a bankruptcy case, the "split discharge" will discharge the post-petition community from all debts, other than those excepted from discharge under §§ 1228(a)(1), 1328(a)(1), and § (without the limitation in a Chapter 13 case imposed by § 1328(a)(2)), § 523, with the non-filing spouse receiving the benefit of §§ 523(c) and (d). So, unless the requirements of § 523(c) and the applicable rules are met as to the non-filing spouse, the debts mentioned in § 523(c) (subsections (2), (4), (6), and (15) of § 523) will be discharged.[47]

---

**46.** There is at least one writing that advances this position, though more out of a feeling about the nature of justice and right than upon statutory interpretation. *See,* Joanne Henderson, "For Better or for Worse: Liabili-

ty of Community Property After Bankruptcy," 29 Idaho L.Rev. 893 (1992).

**47.** § 523(c)(1) (subsection (c)(2) applies only to federal depository institutions regulatory agencies) states:

The non-filing spouse also receives the benefit of § 523(d), which by its own terms is limited to proceedings against the debtor.[48]

The Court, after reflecting extensively on the language of the statute, offers two arguments, in addition to that offered by First BIDCO, in support of the "omnibus" viewpoint. The first ground for this interpretation hinges on the reference in § 524(a)(3) to § 1328(a)(1), only, rather than to § 1328(a) or § 1328(a)(2), when combined with the reference to "section 523." While the reference to "section 523" incorporates § 1328(a)(2) in the filing-spouse's case by requiring a present-sense analysis of what "is excepted from discharge," this argument avers that the incorporation of only those parts of § 523 referred to by § 1328(a)(2) does not necessarily carry over to the hypothetical case of the non-filing spouse.

Recall that § 523 generally describes kinds of debts which are rendered non-dischargeable. Section 523, however, is not all-pervasive; it applies only to specific sections of the Bankruptcy Code under which a debtor may obtain a discharge.[49] The one discharge provision to which § 523 does not apply is § 1328(a), the discharge granted a Chapter 13 debtor upon completion of the Chapter 13 plan. Section 1328(a), in turn, is composed of three subsections identifying debts excepted from the § 1328(a) discharge. Section 1328(a)(1) excepts from discharge those debts of the kind specified in § 1322(b)(5), long-term debts having a payment term that ends after the term of the Chapter 13 plan that are to be maintained according to their terms (perhaps with arrearages to be cured) to the extent required by § 1322, § 1325 and/or the Chapter 13 plan (whichever renders the greater treatment), while § 1328(a)(2) incorporates, to a certain extent, specific provisions of § 523. Section 1328(a)(3) excepts debts for criminal restitution.

By using the limited reference to § 1328(a)(1) rather than the broader § 1328(a), or the specific incorporation of § 523 in a Chapter 13 discharge via § 1328(a)(2), the "omnibus" approach directs that the hypothetical case of the non-filing spouse not vary depending upon the chapter under which the debtor-spouse filed. The extent to which the Chapter 13 discharge is relevant is fixed by the reference to § 1328(a)(1). Without limiting the reference to § 523 by § 1328(a)(2), the statute requires that the entirety of the discharge exceptions under § 523 apply to the hypothetical case of the non-filing spouse.

(c)(1) Except as provided in subsection (a)(3)(b) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15), as the case may be, of subsection (a) of this section.

**48.** § 523(d) provides:

(d) If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

**49.** § 523(a) provides, "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor . . ."

The second ground supporting the "omnibus" viewpoint infers Congressional intent from the language, or actually, the lack of language, in the statute. Congress could have easily specified its intention to require a case-specific method merely by adding the word "such" before the phrase "a case concerning the debtor's spouse." By adding the word "such," the statute would then read, "or that would be so excepted ... in such a case concerning the debtor's spouse." The inclusion of the word "such" would be a reference to the case which was actually filed, the debtor-spouse's case. Or, if Congress had wanted the chapter in which the debtor-spouse is proceeding to be determinative of the extent of the "split discharge," it could have easily caused § 524(a)(3) to extend the "split discharge" to debts excepted from discharge under § 1328(a) instead of only under § 1328(a)(1), or could have listed the various discharge provisions within the Bankruptcy Code as it had done two subsections earlier in the same statute.[50] Had Congress added the language above, the statute would have clearly evidenced an intention to make the "split discharge" case-specific. Because Congress did not do so, the evidenced lack of intent shores up the conclusion that the hypothetical case must be viewed from an "omnibus" frame of reference, meaning that if a debt is not dischargeable under "section 523" (any provision of § 523) or under "1328(a)(1)" the injunctive provisions of § 524(a)(3) do not apply.

### ii. The Inconsistency Of The "Omnibus" Approach

As shown above, the "omnibus" approach hinges its interpretation on the inclusion within § 524(a)(3) of § 1328(a)(1), only (which is seen as excluding § 1328(a)(2)), and the reference to sections 523(c) and 523(d) within the context of the hypothetical case of the non-filing spouse. According to the "omnibus" approach, because the statute only refers to § 1328(a)(1), rather than § 1328(a)(2), the reference in § 524(a)(3) to § 523 is not limited by § 1328(a)(2).

Upon looking closely at the language of § 524(a)(3), it becomes apparent that the references to §§ 1228(a)(1) and 1328(a)(1) in § 524(a)(3) do not apply to the hypothetical case of the non-filing spouse. Sections 1228(a)(1) and 1328(a)(1) refer to long-term debt which, by its terms, is due to amortize after the expiration of the debtor's plan. In both those sections, however, the kinds of debt described by the statutes are permissive, not mandatory.[51] That is, the debtor must elect to classify a debt as one provided for under §§ 1222(b)(5), 1222(b)(9) or 1322(b)(5). Such debts do not belong to the category of the debts covered by those sections unless the debtor exercises his/her discretion to treat such debts accordingly.

In the hypothetical case concerning the debtor's spouse, there is no way to guess whether a particular debt would be excepted from discharge under §§ 1228(a)(1) or 1328(a)(1). To do so would require the court to guess about an election which is solely the hypothetical debtor's to make. In other words, it is impossible to determine, from a hypothetical standpoint, whether a hypothetical debtor would choose to treat a particular debt in the manner described by §§ 1222(b)(5), 1222(b)(9) or 1322(b)(5). Thus, the phrase "or that would be so excepted" as it is used

---

**50.** *See,* § 524(a)(1) ("A discharge ... voids any judgment ... with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328....").

**51.** *See,* § 1222(b) ("the plan *may* ") (emphasis added); *see also,* § 1322(b) ("the plan *may* ") (emphasis added); *c.f.,* § 1222(a) ("The plan shall"); § 1322(a) ("The plan shall").

in § 524(a)(3) does not refer to the preceding references to § 1228(a)(1) or § 1328(a)(1).[52]

Clearly, however, the analysis of the hypothetical case must involve § 523 in some way; the "so excepted" phrase is modified by the phrase, "determined in accordance with the provisions of sections 523(c) and 523(d) of this title . . ." The Court, thus, interprets the statute to mean that the only question that is to be asked regarding the hypothetical case of the non-filing spouse is whether a community claim could be "so excepted" from discharge under § 523. The Court is left, still, with the following question: does the statute's requirement that a court analyze whether a particular claim "would be so excepted [under § 523], determined in accordance with the provisions of sections 523(c) and 523(d) . . ." mean that the nature of the claim is determinative, while the scope of the debtor's actual discharge is irrelevant?

The Court has concluded that § 524(a)(3) requires a court to first examine the *actual discharge* granted in the case of the filing-spouse. Section 524(a)(3) mandates that if a debt *"is* excepted from discharge under [§ ] 523," the inquiry ends. The statute, however, does not refer to "debts that should be," or "debts that could be" excepted from discharge. Instead, the statute focuses only on what actually *"is* excepted from discharge." To determine whether a debt *"is* excepted from discharge under [§ ] 523" in a Chapter 13 case, the court must look to § 1328(a)(2). If the debt is not of a kind excepted from discharge under § 1328(a)(2) in a Chapter 13 case, then the debt is not excepted from discharge under § 523, and therefore, is not excepted from the injunctive provisions of § 524(a)(3).

By referring to what *is* excepted from discharge, the statute intrinsically integrates the case-specific limitation of § 1328(a)(2) into the reference to § 523.

Although the case-specific limitation embodied within § 1328(a)(2) is incorporated into the reference to § 523 in the case of the filing-spouse, according to the "omnibus" approach, it does not necessarily follow that limitation is also incorporated into § 523 for the hypothetical case of the non-filing spouse. However, the language of § 524(a)(3) actually does specify a chapter-sensitive, or case-specific, analysis, as it pertains to the hypothetical case of the non-filing spouse, and thereby incorporates within the reference to § 523 the limitation on dischargeability contained in § 1328(a)(2). After specifying that a court must examine the debts actually discharged (or that would be discharged) in the case of the filing spouse, the statute further specifies that the court should examine whether a debt "would be *so* excepted" in a case concerning the non-filing spouse, had the non-filing spouse actually filed a bankruptcy case. The crucial language is the placement of the word *"so."*

In the instance of the filing spouse, the statute inherently incorporates the limitation on non-dischargeability found in § 1328(a)(2). If it did not, a court would need to examine whether the debt "could be" discharged, or is of the kind described, under § 523. Instead, the statute specifies the analytical frame of reference as what *"is "* excepted from discharge in the actual case. After examining the actual effect of the filing-spouse's discharge on the debt, the court must then turn to the hypothetical case of the non-filing spouse. The court is directed to look at whether a

---

**52.** The Court notes that §§ 1228(a)(1) and 1328(a)(1) are somewhat redundant in that they both describe the same types of debts.

Thus, the sections, themselves, are 3 chapter-specific designations of debts.

debt "would be *so* excepted" from discharge in the case of the non-filing spouse's hypothetical bankruptcy. By use of the phrase "*so* excepted" the statute refers back to the frame of reference of the filing-spouse. An examination of the discharge granted the filing-spouse who files a Chapter 13 case, reveals that the limitation § in 1328(a)(2) is engrafted into the reference to § 523. Thus, the phrase "*so* excepted" must refer back to the nature of § 523 exceptions to discharge present in the filing spouse's case. The hypothetical case necessarily analyzes the extent of the discharge in accordance with the standards applicable to that of the filing-spouse's case, and does not extend, if the filing spouse's case is a Chapter 13, beyond those provisions of § 523 delineated by § 1328(a)(2). In sum, the statute actually specifies an analytical frame of reference, and that frame of reference is "case-specific" to the case under which the filing-spouse filed for relief.

While undoubtedly § 1328(a)(2) is incorporated into the reference to § 523 regarding the case of the filing spouse, to follow the logic of the "omnibus approach" would require that a different standard from that applicable to the case of the filing-spouse be applied to the hypothetical case of the non-filing spouse. Recall that one of the arguments in support of the "omnibus approach" is that § 523 expressly does not apply to a discharge granted under § 1328(a). Therefore, by requiring a court to hypothetically inquire as to whether a debt would be dischargeable had the non-filing spouse filed a bankruptcy case, for the reference to § 523 as it applies to the hypothetical case to have any meaning, § 524(a)(3) requires the hypothetical case of the non-filing spouse to be an omnibus case, not bounded by any discharge restrictions peculiar to separate chapters of the Bankruptcy Code. Otherwise, the "omnibus" approach concludes, the discharge analysis under the hypothetical Chapter 13 case would be meaningless, because if § 523 was inapplicable, the only discharge provision in a Chapter 13 left for the court to hypothetically analyze is § 1328(a)(1) (which, the Court has shown, cannot be analyzed from a hypothetical frame of reference).

Section 523, however, is applicable to cases under Chapter 13 by the inclusion of certain provisions of § 523 in § 1328(a)(2). While § 523, by its own terms, does not apply to a discharge granted under § 1328(a), the Court has shown that reference to § 523 in § 524(a)(3) includes, or integrates, § 1328(a)(2). Therefore, the argument that the reference to § 523, without more, is meaningless unless the reference is interpreted as requiring an "omnibus" examination of the type of debt sought to be excepted from "split discharge" fails. The reference to § 523 has meaning in the case-specific context because § 523 is limited by the case under which the debtor-spouse files for relief.

First BIDCO advances a final argument to convince us of the propriety of the "omnibus" approach. According to First BIDCO, the requirement in § 524(a)(3) that the hypothetical case be "determined in accordance with the provisions of sections 523(c) and 523(d)" requires that the whole of § 523 be applicable to the hypothetical case. Otherwise, that phrase would be written out of the statute if the debtor-spouse filed a Chapter 13 case because § 523(c) applies only to those types of debts described in paragraphs (2), (4), (6), and (15) of § 523(a), while § 523(d) applies only to § 523(a)(2), and debts described in subparagraphs (2), (4), (6), and (15) of § 523(a) are dischargeable under § 1328(a). Thus, the protections accorded the non-filing spouse under § 523(c) would never apply in a case-specific hypothetical Chapter 13 case.

There is, however, a great difference between an interpretation of a statute

which totally eviscerates the intention of the statute so as to leave certain portions of the statute absolutely bereft of any meaning whatsoever, and an interpretation which applies a provision in some, but not all, instances according to the context in which that provision applies generally. Under the case-specific approach, the reference to §§ 523(c) and (d) is not eradicated from the statute. It still applies in Chapter 7 and Chapter 12 cases, because in those instances, the paragraphs to which §§ 523(c) and (d) apply are exigent within the discharge provisions of those chapters. In a Chapter 13 case, the paragraphs to which §§ 523(c) and (d) apply, however, are dischargeable, and thus, §§ 523(c) and (d) do not have any application. Far from eliminating the reference to § 523(c), the "case-specific" approach recognizes that the references to other statutory provisions must be interpreted according to the context in which those provisions apply.

Additionally, the "omnibus" approach suggests that certain language could have been inserted into the statute to make the statute clearly case-specific. Although § 524(a)(3) is not the most clearly written statute, the "case-specific" approach hinges on language already present within the statute for support, while the counter-argument, "omnibus" approach, relies on language which could have been inserted to make the meaning of the statute clearer. Clearly, the stronger of the two arguments is that which is based on language already present within a statute rather than language possibly absent from the statute.

The Court notes as well that an argument about what a statute means based on what could have been added to a statute generally works equally well for both posi-

tions. In this case, in fact, an argument based on absent language is even more persuasive for the "case-specific" approach rather than the "omnibus" approach. If Congress wished the reference to § 523 be analyzed within the hypothetical case of the non-filing spouse along the lines of an "omnibus" approach, § 524(a)(3) could easily have stated that the "split discharge" does not apply to a debt which would not be discharged in a Chapter 7 or Chapter 12 case, as Congress actually did in § 524(b)(2).[53] Further, if Congress had wanted the reference within § 524(a)(3) to "section 523" to be a general reference to debts "of the kind specified in section 523," Congress also could have specified so as it did in § 1228(a)(2) (discharges all debts except any debt "of the kind specified in section 523(a) …"), § 1228(c)(2) (discharge under § 1228(b) discharges all debts except those "of a kind specified in section 523(a) …"), and § 1328(c)(2) (discharge under § 1328(b) discharges all debts except those "of a kind specified in section 523(a) …").

On a final note, an argument could be made that interpreting the hypothetical case of the non-filing spouse as case-specific, fully negates the necessity of the hypothetical case, and therefore renders the provision superfluous. That is, that a case-specific interpretation alleviates any need to determine whether a debt not discharged in the debtor-spouse's bankruptcy case, would nonetheless be discharged had the non-filing spouse filed a bankruptcy under the same chapter because there are no debts which would not be excepted from a discharge under § 1328(a), by operation of § 1328(a)(2), in one spouse's case, which could be excepted

---

**53.** § 524(b)(2) provides:

   (b) Subsection (a)(3) of this section does not apply if—
     ***

    (2)(A) the court would not grant the debtor's spouse a discharge in a case under *chapter 7* of this title concerning such spouse …
(emphasis added).

from discharge by § 1328(a)(2) if the other spouse had filed a case under that chapter.

Although such an argument is true for one of the three categories of debts listed by § 1328(a)(2), it is not true for every kind of debt listed in § 1328(a)(2). Section 1328(a)(2) excepts debts listed in paragraphs (5), (8), and (9) of § 523(a). Section 523(a)(8) excepts debts for student loans without reference to who actually incurred the debt. To fall within the purview of this subsection of § 523(a), it is not necessary that the debtor actually be the one who incurred the debt.[54] In other words, the debts described in Paragraph (8) of § 523(a) are not debtor-dependent debts. Assuming that the debtor files a Chapter 13 case, but the debtor is not the spouse who actually incurred the student loan debt, and that the debt gives rise nonetheless to a community claim under the Bankruptcy Code (that is, community property may be liable to satisfy the debt), then regardless of whether the debtor actually incurred the debt, the debt will not be discharged because it is a claim of the kind described by § 523(a)(8). Thus, when looking to the effect of the collection injunction on the post-petition community of the debtor and his/her spouse, because it is a debt falling within the ambit of § 523(a)(8), it is also excepted from the § 524(a)(3) collection injunction in the case of the filing-spouse. A court need never reach the hypothetical case of the non-filing spouse to determine whether that debt is excepted from discharge.

Debts described under §§ 523(a)(5), and (9), however, are debtor-dependent, and therefore the split discharge can be limited though a debt be dischargeable in the fil-

ing spouse's Chapter 13 bankruptcy case. Section 523(a)(5) states that debts "to a spouse, former spouse, or child of *the debtor*, for alimony to, maintenance for, or support of such spouse or child ..."[55] are not dischargeable. Section 523(a)(9) states that debts "for death or personal injury caused by *the debtor's* operation of a motor vehicle if such operation was unlawful because *the debtor* was intoxicated from using alcohol ..."[56]

If a debt of the nature described in §§ 523(a)(5) or (9) is a community claim, but is the result of, or was incurred because of, the non-filing spouse's alimony or child support obligation, or intoxicated operation of a motor vehicle, the debt will be discharged in the debtor-spouse's bankruptcy case, because §§ 523(a)(5) and (9) only apply to those kinds of debts incurred by the debtor. However, under our approach, § 524(a)(3) requires reference to the hypothetical case, because in the hypothetical Chapter 13 case, the §§ 523(a)(5) or (9) debts would not be discharged in the hypothetical Chapter 13 case of the non-filing spouse.

The "case-specific" approach to the hypothetical case of the non-filing spouse, then, is not utterly otiose. Instead, a court must still examine the hypothetical case of the non-filing spouse to determine whether a debt of the kind described in §§ 523(a)(5) and (9) exists if the non-filing spouse had filed bankruptcy.[57]

Based on the foregoing analysis, this Court believes that the "case-specific" approach better harmonizes the intrinsic differences between discharge exceptions in different chapters of the Bankruptcy Code, as well as the effects of discharge within

---

**54.** *See, Deodati v. M.M. Winkler & Assocs. (In re M.M. Winkler & Assoc.),* 239 F.3d 746 (5th Cir.2001) (debts incurred because of vicarious liability for partner's fraud on client excepted from discharge of innocent partner).

**55.** (emphasis added).

**56.** (emphasis added).

**57.** If the non-debtor spouse owes § 523(a)(5) debt or caused § 523(a)(9) liability, and the claims are community claims, the limitation of § 523(a)(3) requires that non-filing

the provisions of § 524(a), and moreover, is better grounded in reason and the actual language of the statute. This Court finds the soundest interpretation of § 524(a)(3) is that it requires a "case-specific" analysis of both the case of the filing spouse, and that of the hypothetical case of the non-filing spouse, meaning that the analysis of both cases proceeds according to the chapter under which the debtor-spouse actually filed.

## IV. CONCLUSION

In sum, the case-specific approach interprets the statute to require an analysis of the hypothetical case involving the non-filing spouse as if the non-filing spouse had joined the bankruptcy case of the filing spouse. Thus, if the filing spouse filed a Chapter 13 case, the hypothetical case requires a court to determine whether, if the non-filing spouse had filed a Chapter 13 case, the debt would be excepted from the non-filing spouse's discharge in such case. In essence, the case-specific approach concludes that the "split discharge" would mirror the discharge granted pursuant to the Chapter under which the debtor-spouse filed for relief.

Because the debt owed to First BIDCO is of a kind described by § 523(a)(6), it is not dischargeable in Mr. Dyson's Chapter 13 bankruptcy case. Furthermore, because the debt is not a debt provided for under §§ 523(a)(5), (8), or (9), it would not be "so excepted" from discharge had Mrs. Dyson joined Mr. Dyson's bankruptcy case. Therefore, the debt will not be excepted from the application of the

§ 524(a)(3) injunction on collection against the Dyson's post-petition community property should Mr. Dyson complete his Chapter 13 plan and receive a discharge under § 1328(a). First BIDCO is not entitled to the relief it seeks, and the Court will deny the Motion for Default Judgment filed by First BIDCO and dismiss the Complaint, without prejudice. Should Mr. Dyson's Chapter 13 case be converted to a case under Chapter 7, or should Mr. Dyson seek a discharge under § 1328(b), leave will be granted to re-file this action as if it had been filed an accordance with the provisions of § 523(c).[58] A separate Order shall be issued.

---

spouse's interest in the community be subject to those claims.

**58.** The dismissal without prejudice is the required vehicle of disposition, as (we think) it constitutes a final judgment upon a case or controversy. Clearly the Code contemplates standing to raise the issue of dischargeability, though, as in this case, the outcome may not prove to be the final disposition. should the

case be converted or a hardship discharge granted, or should the community between the Dysons be dissolved (separation of property, death of filing spouse), then the effect of § 524(a)(3) seemingly evaporates. Nevertheless, the matter is ripe for adjudication, though the adjudication through this proceeding will not be with prejudice.